**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-cr-121- CRC** |
| | ) | |
| **STEPHEN BAKER** | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**DEFENDANT STEPHEN BAKER'S MOTION FOR RECONSIDERATION OF**
**THE COURT'S OPINION AND ORDER DENYING MOTION TO COMPEL**
**DISCOVERY ON CLAIM OF SELECTIVE PROSECUTION**

William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

NOW COMES, Defendant Stephen Baler by and through his undersigned counsel of record, William L. Shipley, and respectfully moves this Court to reconsider its Order denying the Defendant's motion to compel discovery regarding a claim of selective prosecution.

## I.    There Is Sufficient Evidence of Discriminatory Effect To Justify Discovery.

First, the Court mistakenly states in its Order that the Defendant has only initials of media members and the organizations they work for.  The Defense has the names of all the individuals referred to by their initials and has provided those names to the Government.  Prior to providing those names, the Defense made a discovery request for production of the computerized list of all journalists authorized by the USCP to enter and remain on the Capitol grounds on January 6.  The existence of such a list is not speculative – that such a list of authorized journalists exists was confirmed by USCP Capt. Fred Hopkins during his testimony in *United States v. Kenyon*, 23-cr-101-ABJ.  The Government declined to provide any discovery on the issue of "selective prosecution."

The defense opted to not include the names of the 61 journalists in its motion to not publicly accuse them of alleged illegal activity in the record of this case.  The Government knows of the identity of each journalist about whom discovery is being requested – they are captured on CCTV, USCP, and third-party video in the same way as the 1800 people the Government has prosecuted.  Many of the journalists posted their own video on the internet or social media just as Defendant Baker did.

https://thepragmaticconstitutionalist.locals.com/upost/3676415/fights-camera-action-frontline-photogs-in-action-on-january-6

Second, the Court's Order suggests that differences in the strength of the evidence might exist because of Defendant Baker's comments -- finding them relevant to his "intent" -- and that might justify the differential treatment between Defendant Baker and other members of the media who have not been charged.

But, using the same bench instructions employed by this Court in trials on these same four misdemeanor offenses, the subjective "intent" of a defendant is not an element of at least three of the four counts.

Count One, Entering and Remaining on Restricted Ground without Authorization, in violation of 18 U.S.C. Sec. 1752(a)(1), has the following elements:

> First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

> Second, that the defendant did so knowingly.

Neither element is proven/disproven by the "motive" or "intent" of the individual who enters without authorization.  Evidence of such motive or intent does not make one case more viable or persuasive compared to another. A violation of this statute is established by the Defendant knowingly entering and remaining in a restricted location – the purpose for doing so not relevant to the offense.

Count Two – Disorderly or Disruptive Conduct in a Restricted Building or Grounds, in violation of Sec. 1752(a)(2), has the following elements:

First, that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

Third, that the defendant's conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

"Disorderly conduct" is conduct that tends to disturb the public peace or undermine public safety. Disorderly conduct includes when a person acts in such a manner as to cause another person to be in reasonable fear that a person or property in a person's immediate possession is likely to be harmed or taken, uses words likely to produce violence on the part of others, or is unreasonably loud and disruptive under the circumstances.

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.

Mogelson not only did the things described by the Court in its Order, the story he wrote also notes – as shown by CCTV video – that he entered the Capitol through the broken window next to the Senate Wing Doors among the first group of rioters to break into the building. Mogelson admits that by his manner of dress he was attempting to hide the fact that he was a member of the press, appearing and acting in the same manner as the rioters he was among.

The Government has repeatedly urged in both trials and at sentencing that merely being inside the restricted areas on January 6 was "disorderly" and "disruptive" because the mere presence of unscreened individuals inside the security perimeter meant all proceedings had to be halted until the building was cleared, searched, and established to be safe for members of Congress to return. Mogelson's presence, no less than Mr. Baker's, contributed to this

situation and met the "disruptive" and "disorderly elements of the offense on the metric the Government has employed against hundreds of others.

The same is true for any other unauthorized member of the press in the restricted areas – maybe all 61 names provided by the Defense to the Government -- yet, only Mr. Baker stands charged.

Count Three – Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. Sec. 5104(e)(2)(D), how the following elements:

> First, that the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings.

> Second, that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

> Third, that the defendant acted willfully and knowingly.

> A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.

As with Count Two, the Government has regularly argued that mere presence inside the Capitol without being screened was disorderly and/or disruptive conduct because the business of the Congress could not go forward under such circumstances. No further actions by persons who entered the building without authorization was necessary. The Government has charged this misdemeanor offense against individuals who entered only a matter of a few feet and remained less than five minutes.

Count Four – Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. Sec. 5104€2)(G), has the following elements:

First, that the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

Second, that the defendant acted willfully and knowingly.

This may be the only one of the four alleged crimes that Mogulson and other uncharged members of the media did not violate. This count requires some additional conduct while inside the building, i.e., "parading, demonstrating, or picketing." The Govenrment normally proves this element by items being worn or carried, or due to yelling, cheering, or chanting inside the Capitol.

This Court's order separates Mr. Baker from other journalists – expressly Mogelsen -- with three specific allegations: his comment at 1:10 pm directed at members of Congress about what was coming to the Capitol; his "antagonizing" of the police inside and failure to follow their commands; and his comment late in the evening on January 6 about regretting not having had the opportunity to take a laptop from former Speaker Pelosi's Office.

As has been noted, at 1:10 pm Mr. Baker was between ¼ and ½ mile from the Capitol building -- the Government places him on the west side of the Reflecting Pool. No one had entered the Capitol – that happened over an hour later at 2:13 pm.

Mr. Baker was not in a position to see or know that some individuals had engaged in violence against police at that time. This was only 20 minutes after the first breach at the Peace Fountain which took place at 12:51 pm. Between 12:51 and 1:10, the crowd was filling in the open area on the west side of the Capitol Building, and the police were establishing and maintaining bike rack

barriers just a few yards west of the building itself – far away from Mr. Baker's location between Third Street and the Reflecting Pool.

There were planned and permitted protests set for the East Side of the Capitol later in the afternoon.  To suggest that Mr. Baker's comment at 1:10 pm, far away from where any violence was happening, was a comment advocating violence or even anticipating violence that came later is speculation and is not evidence of any of the four crimes with which he is charged.

The Court also notes that Mr. Baker "antagonized" the police by asking if they were going to shoot him.  Lost in the context here is that this happened in the immediate aftermath of a rioter being shot by a Capitol Police Officer outside the Speaker's Lobby door, not far from where Mr. Baker was, and the USCP broadcast that there was an "active shooter" in the building to all law enforcement. That broadcast led USCP and other law enforcement to draw their firearms for the first time inside the Capitol – not at all surprising under the circumstances.  The comment was in response to that change in posture by the USCP towards the crowd inside that Mr. Baker made his comment.  It was not to "antagonize" – it was a question by a journalist to a Police Officer about whether the Police were prepared to use deadly force on the crowd inside the United States Capitol.  It led to a question-and-answer exchange that lasted more than one minute.  The exchange is in this video, recorded by Mr. Baker, beginning at 32:55 on the counter:

https://www.youtube.com/watch?v=LlXLvbk-6YY

Mr. Baker makes reference to the fact that he has a camera, not a gun. The Officer tells him to stay back, and Mr. Baker complies.  The Officer asks

Mr. Baker to tell the crowd behind him what is happening and gives Mr. Baker a "thumbs up."  The Officer explains that they have had a "shots fired" report, and what they are doing in response -- "It' not us" he says meaning the officers he is with.  Mr. Baker remains in this location, talking with 3 different officers in front of him, for more than five minutes.  Mr. Baker is standing with a group of approximately 10 protesters – none of whom are engaging with the police in any manner – while at least 20-30 Officers are in their immediate proximity, many with firearms drawn.  No law enforcement had their firearms drawn – then suddenly many officers had their guns drawn.  Mr. Baker, like others inside, didn't know what had caused this change in posture.

The Officers never tells Mr. Baker to leave that location – only that he should not go farther forward – and Mr. Baker never did so.  Mr. Baker remained in the same location, filming law enforcement officers going up and coming down a nearby staircase.

The idea he was "antagonizing" the police as suggested by the Government is not only a mischaracterization, it is a hypocritical mischaracterization because the Government knows this sequence of events, the broadcast of the "active shooter" advisory – *which was not correct* – and the response of USCP officers inside the Capitol when they heard that advisory.

The claim here – that Mr. Baker was antagonizing police when they were pointing firearms at the crowd inside the Capitol for the first time – is unworthy of the Department of Justice.  Mr. Baker was asking questions and the police were giving him answers, all of which he recorded.

Approximately five minutes later, Mr. Baker and one female officer walk down a corridor together – shoulder to shoulder – and pass by and through at least two dozen other officers in that corridor. The female officer and Mr. Baker are conversing the entire way – captured only on CCTV because Mr. Baker had turned off his camera at that point – and the two of them went to an exit where Mr. Baker departed from the building.

Finally, Mr. Baker's comment – which he recorded himself – many hours later while watching news coverage of the events of the day wherein he expressed his unhappiness in not having found himself the laptop of former Speaker Pelosi, is considered in isolation from his employment as a journalist.

There was once a time when Daniel Ellsberg was celebrated for stealing the Pentagon Papers and giving them to the New York Times, Washington Post, and other newspapers to publish. The documents showed that the Johnson Administration had lied not only to the public but to Congress as well about the progress of the Vietnam War. Mr. Baker is being prosecuted based in part for a comment lamenting the fact that he might have missed an opportunity of potential similar national importance to the public.

This does not make Mr. Baker and "active participant" as suggested by the Government – it makes him an opinion journalist with opinions that the Government does not approve. That is juxtaposed against uncharged journalist Mogulson -- and others – who were opinion journalists with opinions that the Government does approve. They did not have criminal charges filed against them.

Using that as a distinguishing fact for purposes of prosecution is a violation of the First Amendment, and outrageous Government misconduct that warrants dismissal of the charges.

## II.    There Is Sufficient Evidence of Discriminatory Purpose To Justify Discovery.

The Court held that the Defendant has not shown sufficient evidence of "discriminatory purpose" to justify discovery.

But the Court's Order would require "direct evidence" of such purpose – evidence that is likely to not exist, and evidence a defendant could not obtain without access to discovery enforced by the Court.

It is not speculation to say that Mr. Baker has reported multiple stories AFTER January 6 that are highly problematic and embarrassing to the Capitol Police and Department of Justice.

It is not speculation to say that Mr. Baker was not charged for a period of more than 36 months even though he has been under scrutiny for nearly that entire time because of his public reporting of where he went and what he observed on January 6.

The link between the two is inferential.  The fact that it is inferential does not make it speculative.

Mr. Baker's comments on and after January 6 reflect his political views.

Mr. Baker's reporting on controversial matters in a way that is critical of and embarrassing to the Department of Justice and U.S. Capitol Police also reflect his political beliefs.

That same Department of Justice, at the urging of the U.S. Capitol Police we believe, waited three years to charge Mr. Baker.

The possible conclusion that there is a connection between these facts – and the facts -- is not "speculation."

## CONCLUSION

Based on the above, Defendant Steven Baker respectfully requests that this Court reconsider its Order denying him access to discovery as described herein, and grant him an additional 21 days after the Government produces such discovery to file a motion asking the Court to reconsider its decision denying his motion to dismiss.

Dated: October 31, 2024                Respectfully Submitted,

William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*